MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney

  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102-3495
  Telephone: (415) 436-7000
  FAX: (415) 436-7009

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>         v.<br><br>JOHN CLIFFORD POLLARD,<br><br>    Defendant. | Case No.  CR-13-00722-WHO<br><br>SENTENCING MEMORANDUM<br><br>Date:   May 29, 2014<br>Time:  1:30 p.m. |

A.   <u>Charges and Conviction</u>

   On November 14, 2013, a one count information was filed charging the Defendant, John Pollard, with a violation of 26 U.S.C. § 7206(2) – Assisting in the Preparation and Presentation of a false Employer's Quarterly Federal Tax Return.  On November 14, 2013, Defendant pled guilty to Count One.  Sentencing is scheduled for May 29, 2014 at 1:30 p.m.

B.   <u>Sentencing Recommendations</u>

   The plea agreement and PSR agree that the base offense level is 16 and the adjusted offense level is 13.  The Guideline provides a 12-18 month range for a level 13. .

   The PSR recommends a sentence of 3 months custody (variance), 1 year supervised release with 6 months home confinement, no probation, no fine, and restitution of $173,463.

   The United States recommends a sentence of 9 months custody, 1 year supervised release with 3

months home confinement, no probation, a fine of $3,000, and restitution of $173,463.

C. <u>Summary of Government's Recommendation</u>

Defendant owned and operated several construction companies from 2002 to 2010. Currently, he continues to operate 512 Construction, Inc. doing business as SF Garage, which is the business involved in the charged conduct. Defendant caused false Employer's Quarterly Federal Tax Returns [Forms 941] to be filed with the IRS in 2009. These returns were false because they did not report cash and payroll checks from three bank accounts. Defendant caused his bookkeeper to enter wages from only one bank account to the payroll company to be reported on the Forms 941 while failing to report $430,430.17 in cash and wages paid from three other bank accounts. (PSR ¶ 10, 11). This resulted in unpaid tax of $173,463. (PSR ¶ 12)  Through cooperation between the Defendant and the civil IRS, the parties signed a civil closing agreement resolving the Defendant's civil tax liability relating to these unreported wages. The civil closing agreement includes the tax of $173,463 and the associated penalty and interest on that tax, totaling $306,854. (PSR ¶ 12)

Defendant admittedly ran his business to stay afloat. He accomplished this by using the government's employment taxes. Defendant also had access to significant funds through kiting, which included cashing fake employee paychecks at a check cashing business to cover NSF checks on an almost daily basis. (PSR ¶ 10).   There were two instances when his kiting amounted to check fraud. PSR ¶ 8.  In addition to the IRS and banks, the Defendant also misused an employee's credit card for business expenses. That credit card still has an unpaid balance of $18,000. (PSR¶ 10).

While Defendant demonstrates his remorsefulness by hiring a respectable tax attorney in order to run his business in compliance with the tax laws, as well as admitting his associated civil tax liability, Defendant's criminal conduct and the manner in which he ran his business should also be considered. Some of this conduct, such as check kiting and using fake employee paychecks to operate his business, are not part of the substantive charge in this case. However, the government urges the Court to consider this conduct as it pertains to the manner in which he ran his business. See U.S.S.G. 1B1.3.

The United States does not suggest that the Court ignore that the Defendant is accepting his responsibility by making an effort to comply with the tax laws. However, there needs to be a just punishment appropriate for the crime with consideration for Defendant's efforts, a deterrent message to

the public that tax crimes are treated seriously, and uniformity of sentencing considering similarly situated defendants. The United States submits that its sentencing recommendation adequately addresses these goals.

D.      Standard for Sentencing

In United States v. Carty, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit summarized the framework for sentencing as follows: The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment. Id. at 991(citing 18 U.S.C. § 3553(a) and (a)(2)).

All sentencing proceedings are to begin by determining the applicable Guidelines range. The range must be calculated correctly. In this sense, the Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process. Id. at 991(citing Gall v. United States, 128 S.Ct. 586, 596 (2007) and Kimbrough v. United States, 128 S.Ct. 558, 574 (2007)).

The parties and the PSR all agree that the base offense level is a level 16 and, with a 3 point adjustment for acceptance of responsibility, the total offense level is 13.

### 18 U.S.C. § 3553(a)

The district court should then consider the 3553(a) factors to decide if they support the sentence suggested by the parties, i.e., it should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. Id. at 991 (citing 18 U.S.C. § 3553(a)(1)-(7); Gall, 128 S.Ct. at 596-97 n. 6)

In light of the congressional command that the court shall impose a sentence that is sufficient to comply with the[se] purposes, the court must impose a sentence that promotes respect for the law, achieves just punishment and which afford[s] adequate deterrence to criminal conduct. In this case, there is a compelling need for a sentence that includes a term of incarceration at the Bureau of Prisons

for 9 months and 3 months home confinement.

Such a sentence is sufficient, but not greater than necessary, and accounts for (1) the seriousness of the offense, (2) provides adequate deterrence, (3) avoids sentencing disparities, and (4) is consistent with the Guidelines. A sentence of less than 6 months, or any deviation from the Guidelines, is not warranted. The most critical factors here avoiding sentencing disparities and adequate deterrence.

### 1. The Defendant's Misconduct Was Serious

The conduct is this case is serious because it is a disturbingly familiar case of a wealthy defendant manipulating a system to gain more money.

### 2. General Deterrence - Respect For the law

The need for deterrence in this case is tantamount. A non-custodial term cannot achieve that purpose. General deterrence is one of the prescribed goals of every sentencing, United States v. Pugh, 515 F.3d 1179,1194 (11th Cir. 2008), but it occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch 2, pt. T, introductory cmt. (emphasis added). See also United States v. Burgos, 276 F.3d 1284, 1290 (11th Cir. 2001) (observing "[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence").

Our tax system is based on the honesty of each taxpayer in filing their tax returns. Most citizens are honest taxpayers. The IRS is simply unable to verify the honesty of every tax return filed by individuals, businesses, estates, etc. In fact, there are very few tax prosecutions compared to the number of tax returns filed. To uphold the integrity of our system of taxation, the United States relies heavily on the deterrent effect of each and every criminal case.

In this case, a 3 month prison term, or a non-custodial sentence, would fail to achieve deterrence and respect for the law. In fact, it would send a message that you can gamble with the tax laws and the price is low when you get caught. A purely probationary term would send a message that the

SENTENCING MEMORANDUM
CR-13-00722-WHO                        4

punishment for criminal tax evasion and a civil tax case are of no significant difference. For these reasons, and for the reasons discussed below, the Court should impose a 9 month custodial sentence, and 3 months home confinement as a condition of supervised release. It is a sentence within the guidelines, it recognizes Defendant's efforts to change and follow the law, and it promotes respect for the law in the event that the Defendant or others choose to ignore the law in the future.

A sentence of no 3 months imprisonment, or probation, does not promote deterrence. Instead it fosters a belief that tax crimes are not serious, that they are inconsequential. Such a sentence cries out that this Court tolerates lies to government agencies. It also promotes the cynical belief that justice system punishes only the poor, but gives a pass to others. And finally it promotes gambling with tax returns. A game of chance with high rewards. A game of chance with little or no risk, in which the only consequence to losers is to pay the civil tax debt.

The importance of imprisonment in tax cases was highlighted in United States v. Ture, where the Eighth Circuit vacated a non-prison sentence in a $250,000 tax evasion case because the district court failed to consider the importance of a term of imprisonment to deter others from stealing from the national purse. 450 F.3d 352, 358 (8th Cir. 2006). The admonition of the Court of Appeals in Ture applies: the goal of deterrence rings hollow if a prison sentence is not imposed in this case. Id.

Along those lines, there is a public perception in cases like this of wealthy, white collar defendants finally being charged, and getting away with light sentences or probation. A sentence of imprisonment is proper, and should be imposed to end that belief.

This case is not different in any way that warrants a departure from the Guidelines.

### 3. A Nine Month Custodial Term Will Avoid Sentencing Disparity

Title 18, U.S.C. § 3553(a)(6), provides that one of the factors to be considered in sentencing is the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. When the sentencing guidelines were promulgated, the goals included reducing the sentencing disparity between tax offenders and reducing the number of probationary sentences. In this vein, the United States submits that this Court should consider two similar sentences.

In US v. Brendan McGrath, CR 11-00158-JSW (N.D. Calif.), McGrath ran a construction business and failed to report his gross receipts on his tax returns. The tax loss was between $5,000 and

$12,500, corresponding to a level 10.  McGrath was sentenced to 4 months imprisonment.  Similarly, McGrath agreed and signed a civil closing agreement which he fully paid prior to his sentencing.

US v. Brian Kenny, CR 13-00495-WHA (N.D. Calif.) involved the filing of false Employer's Quarterly Federal Tax Returns for Kenny's construction company.  The offense level was calculated at level 13.  Kenny also signed a civil closing agreement and paid the full amount of his restitution, in the amount of $199,493.83, prior to sentencing.  Kenny was sentenced to 6 months imprisonment and 1 year Supervised Release with 6 months home confinement.  Kenny's plea was pursuant to Rule 11(c)(1)C) of the Federal Rules of Criminal Procedure, however, his counsel argued at sentencing for a probationary sentence.

There are slight differences between these cases, none of which justify a sentence lower than 9 months imprisonment and 3 months home confinement as a condition of supervised release.  There is no need to avoid unwarranted sentence disparities among these three defendants with similar records who have been found guilty of similar conduct.

E.   Restitution

Restitution in the amount of $173,463 is due to the IRS in this case.  The IRS can collect civil penalty and interest first, then the tax.  In this manner, the restitution is significant in the event that the Defendant decides not to pay the tax and the government can collect on the restitution.  Should the Defendant fully pay his civil tax liabilities, the restitution would be fully paid.

F.   Fine

Although the Guidelines provide for a fine in the range of $3,000 to $30,000, the PSR recommends no fine based on Defendant's ability to pay.  The United States respectfully disagrees with this assessment and urges the Court to impose a $3,000 fine.  The Defendant provides financial support to both his elderly parents, and pays for his brothers' educational expenses.  PSR ¶ 39.  However, Defendant's generosity toward his family members should not take precedence over his ability to pay a fine.  Defendant's ability to financially assist his family while failing to pay an $18,000 debt for his unauthorized charges on his employee's credit card is simply wrong.  PSR § 10.  Defendant should pay a fine.

G.  <u>Criminal History Category</u>

The PSR calculated Defendant's Criminal History Category as I.  The United States is in agreement.

H.  <u>Conclusion</u>

The United States submits that the tax loss results in adjusted offense level 13.  Based on a CHC I, the guideline range is 12 - 18 months.  The United States recommends a sentence of 12 months, to be served 9 months incarceration, 1 year supervised release with 3 months home confinement, restitution of $173,463, a fine of $3,000, and a special assessment of $100.  Such a sentence is reasonable given the tax loss and consideration of the § 3553 factors.  That sentence takes into account the seriousness of this offense and deters any future misconduct of the defendant and others.

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/ Cynthia Stier
CYNTHIA STIER
Assistant United States Attorney
Tax Division

SENTENCING MEMORANDUM
CR-13-00722-WHO                              7